IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRYSTAL WALTERS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. )<br>) | Civil Action No. 20-789 |

ORDER

AND NOW, this 13th day of July, 2021, upon consideration of the parties' motions for summary judgment, the Court will grant Defendant's motion except with regard to Defendant's request for costs.[1] The Commissioner of Social Security's final decision finding Plaintiff not disabled and denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, is supported by substantial evidence in the record. Accordingly, that decision will be affirmed. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).[2]

---

[1] Defendant requests summary judgment in its favor "together with costs being taxed against Plaintiff" (Doc. No. 13, pg. 2), but does not return to the issue of costs in its accompanying brief. Therefore, the Court will not address costs. *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996). Rather, the Court will partially grant Defendant's summary judgment motion.

[2] Plaintiff seeks reversal of the Commissioner of Social Security's ("Commissioner") final decision and an award of benefits or, alternatively, remand to an Administrative Law Judge ("ALJ") who has not already presided over the matter. Plaintiff argues the final decision must be reversed because the ALJ erroneously found she is capable of light work, failed to appreciate her mental health impairments, and relied on flawed Vocational Expert ("VE") testimony. She also appears to attack the ALJ's determination that she does not suffer from a listed impairment, *i.e.*, an impairment that is recognized as precluding substantial gainful activity *per se* because of its

1

recognized severity. The Court has examined these arguments, the final decision, and the record, and finds the underlying decision is supported by substantial evidence and free from legal error. Judgment will be entered in Defendant's favor.

The Court will first dispense with Plaintiff's listings argument. It is unclear whether Plaintiff intended to argue the ALJ's listings finding was deficient separately from her challenge to the ALJ's residual functional capacity ("RFC") determination. Therefore, out of an abundance of caution, the Court will address Plaintiff's arguments concerning listed impairments both as a distinct challenge to the listings determination and as part of Plaintiff's challenge to the sufficiency of the evidence supporting the ALJ's RFC determination.

ALJs determine whether claimants are disabled using a five-step, sequential evaluation process. *Plummer*, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520). Some claimants are found disabled after just three steps, namely, those who suffer from the particularly severe physical or mental impairments that are listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. The impairments listed therein are "defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To prove disability at step three, claimants must show that their impairment "meet[s] *all* of the specified medical criteria," or that their impairment or combination of impairments are the "equivalent" of a listed impairment. *Id.* at 530—31. To prove equivalence, the claimant must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* When a claimant does not establish disability at step three, the evaluation proceeds to step four where the ALJ must determine the most work the claimant can do, *i.e.*, her RFC. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201—02, 201 n.2 (3d Cir. 2019) (noting that the RFC determination is elsewhere described as an intermediary step between steps three and four). At this step, the ALJ considers all of the evidence in the record concerning severe impairments, non-severe impairments, and their combined effect to formulate the RFC. 20 C.F.R. § 404.1545(a); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ then uses the RFC is to assess whether a claimant can return to past work or adjust to other work. 20 C.F.R. § 404.1520(a)(4)(iv)—(v).

Before the ALJ, Plaintiff conceded through counsel that she was not afflicted by any impairment(s) that met or equaled a listed impairment. (R. 260). It is doubtful the ALJ was not entitled to rely on such an explicit concession. *See Watson v. Barnhart*, 194 F. App'x 526, 529 (10th Cir. 2006) ("Although it is generally improper for an ALJ to summarily conclude, as he did here, that a claimant's impairments do not meet or equal any listed impairment . . . we discern no error where the claimant's counsel unambiguously concedes the step three issue before the ALJ"). Despite Plaintiff's concession, the ALJ took care to identify and evaluate listings that might have applied to Plaintiff. The ALJ specifically considered listings §§ 1.04, 12.04, and 12.06 but found Plaintiff was not disabled pursuant to those listings. For listing § 1.04, the ALJ observed that the record did not support finding Plaintiff's nerve root or spinal cord were compromised. (R. 23). For listings §§ 12.04 and 12.06 the ALJ detailed her consideration of the broad areas of functioning, but found Plaintiff suffered from only moderate limitations rather

2

than the marked or extreme limitations required for those listings. (R. 23—24). The ALJ further noted there was no evidence of marginal adjustment for listings §§ 12.04 and 12.06. (R. 24).

Plaintiff argues that the ALJ minimized her cervical spine condition when the ALJ considered listing § 1.04. However, even now Plaintiff fails to identify evidence in the record that could satisfy her evidentiary burden to show her cervical spine impairment meets or equals the criteria for listing § 1.04. For that listing, claimants must show they suffer from a spine disorder that compromises a nerve root or the spinal cord, but Plaintiff admits that "her spinal disorder does not present itself in the neat package the listing seems to require." (Doc. No. 12, pg. 15). Because Plaintiff has not identified evidence in the record that arguably shows her neck impairment meets or equals the criteria for § 1.04, she has failed to demonstrate any alleged inadequacy in the ALJ's consideration of the listing was harmful to her case. *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

The same can be said of Plaintiff's argument that the ALJ should have considered her migraines according to the listing for epilepsy on account of their possible equivalence to dyscognitive seizures. The listing for epilepsy—§ 11.02—requires seizure occurrence at one of several specified frequencies and further requires demonstration of a marked limitation in one of five areas of functioning ((1) physical; (2) understanding, remembering, or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; (5) adapting or managing oneself). Plaintiff argues the record shows she suffered migraines two times per week, which is similar to the frequency criteria for dyscognitive seizures under § 11.02. However, Plaintiff has not explained how the record demonstrates the other criteria for the listing, that is, marked limitation in one of the five areas of functioning. Instead, she vaguely argues the ALJ did not give "[s]ufficient inquiry" into the areas of functioning, and postulates that no person suffering from headaches daily and migraines weekly could work at the level the ALJ subsequently set out in her RFC. (Doc. No. 12, pg. 17). Similarly, Plaintiff contends that the ALJ "failed to appreciate" her mental health issues when she considered the mental health listings (Doc. No. 12, pg. 17), but she has not identified evidence that undermines the ALJ's finding that she could not demonstrate the "paragraph B" or "paragraph C" criteria necessary to prove §§ 12.04 or 12.06. These challenges to the ALJ's step-three determination lack specificity in identifying how the ALJ's consideration of the evidence was harmful, therefore, Plaintiff has failed to demonstrate the necessity of remand. *See Woodson*, 661 F. App'x at 766.

Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence is more clearly stated, but ultimately unpersuasive. Considering Plaintiff's maximum work ability, the ALJ found Plaintiff to be capable of light work subject to some modifications. Plaintiff argues this is not supported by substantial evidence. The Court must ensure that the RFC determination does not truly lack such support. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The standard is not a demanding one, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). But while the standard is deferential, it does not permit conclusory analyses—ALJ decisions must show their consideration of all the evidence and must include explanations for

why certain probative evidence is credited over "conflicting probative evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Further, reviewing courts may not correct an ALJ's "failure to consider all of the relevant and probative evidence . . . by relying on medical records found in [their] own independent analys[es]," when such records "were not mentioned by the ALJ." *Id.* at 44 n.7 (explaining that pursuant to *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943), the ALJ's decision must be judged according to the ALJ's stated rationale). *Cf. Zellweger v. Saul*, 984 F.3d 1251, 1254—55 (7th Cir. 2021); *Middleton v. Colvin*, No. 2:15-CV-1419, 2016 WL 244930, at *1 (E.D. Pa. Jan. 21, 2016) (explaining that reviewing courts must judge an ALJ's decision according to stated rationale, but examine the entire record and do not err in citing other portions of the record "to provide clarity to the ALJ's rationale").

The Court is satisfied that, in this matter, the ALJ's RFC determination is supported by substantial evidence. The ALJ found Plaintiff's RFC included the capacity for light work (R. 25) which generally requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," standing or walking for a "good deal" of time, or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567(b). The ALJ further specified that Plaintiff could lift, carry, push, and pull twenty pounds occasionally, but only ten pounds frequently, and added limitations on sitting (six hours) and standing/walking (four hours). (R. 25). She also added postural, environmental, and social limitations, and limited Plaintiff to making only "simple work-related decision[s]." (R. 25). The ALJ supported the RFC determination with a four-page, single-spaced, detailed discussion of the evidence she considered in arriving at that finding. (R. 25—30).

Plaintiff's first challenge to the RFC determination is that the ALJ did not fully appreciate her cervical spine condition. For example, Plaintiff argues the ALJ's sit, stand, and walk finding fails to account for how she might position her neck during that time. She urges that evidence in the record concerning the limited range of motion and pain in her neck supports further limitation. However, because Plaintiff has not identified any relevant, probative evidence the ALJ overlooked, her argument is merely a request for reconsideration of evidence the ALJ already examined. The Court will not reweigh evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence"); *Bryant v. Saul*, No. CV 20-727, 2021 WL 2646942, at *1 (W.D. Pa. June 28, 2021). Further, the Court is satisfied with the ALJ's consideration of the evidence concerning Plaintiff's cervical spine. The ALJ considered Plaintiff's testimony, specifically that she had surgery in October 2016 to address Chiari malformation that resulted in complications including decreased range of motion in her neck. (R. 26). The ALJ compared Plaintiff's testimony to medical evaluations that indicated she had full strength at the surgical site. (R. 26). The ALJ also considered evidence that Plaintiff could ambulate normally despite her limited range of motion, as well as MRI results that did not show any significant abnormalities in the cervical spine. (R. 27). The ALJ acknowledged that some evidence in the record indicated Plaintiff had some muscle weakness in her neck, reduced range of motion, and reduced reflexes in 2018, but noted that at that same time Plaintiff was fairly independent and acted as her mother's caregiver. (R. 27). All this led the ALJ to find that Plaintiff was capable of light work with postural limitations, and she found

additional support for that finding in the opinion provided by State agency physician Dr. Fox, whose opinion she afforded great weight. (R. 29). Reviewing the ALJ's assessment of the evidence, the Court is satisfied that she did not fail to address any relevant evidence related to Plaintiff's cervical spine in arriving at the RFC determination.

Plaintiff also argues the ALJ failed to appropriately consider Plaintiff's headaches and migraines in formulating her RFC. To the contrary, the ALJ explained that she considered Plaintiff's testimony concerning her headaches, evidence in the record that she was experiencing mild headaches and severe migraines in 2017, and notes indicating some success controlling her headaches with appropriate medication. (R. 27). Having considered that evidence, the ALJ specifically accommodated Plaintiff's headaches and migraines with environmental limitations, limiting Plaintiff to working "only occasionally . . . in dust, odors, fumes and pulmonary irritants, in extreme cold and in vibration," with exposure "to no more than moderate noise level." (R. 28). Plaintiff counters that "[n]o individual with daily headache and two migraines per week could work occasionally with odors and fumes, and with moderate noise level exposure" because "[t]hose would trigger or increase the symptoms" but cites no evidence in support of that statement. (Doc. No. 12, pg. 17). To the extent the evidence in the record could have supported further limitations arising from Plaintiff's headaches and migraines, Plaintiff is reminded that just because the RFC might have been decided differently does not mean it lacks the support of substantial evidence. *See Hartranft*, 181 F.3d at 360; *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision.").

In addition to arguing that the ALJ failed to appropriately consider her cervical spine condition, headaches, and migraines, Plaintiff quickly raises several additional challenges in the brief. She argues the RFC lacks the support of substantial evidence because the ALJ did not explain how Plaintiff would meet general production demands. Though Plaintiff bore the burden of proving limitations appropriate for inclusion in the RFC, *see* 20 C.F.R. § 404.1512(a), she has not pointed to evidence in the record the ALJ overlooked that demonstrates she cannot meet general production demands. The ALJ included in her discussion of the evidence supporting the RFC indicia that Plaintiff disclaimed difficulty "paying attention, managing her finances, interacting with others, remembering, or concentration." (R. 26). She also considered that Plaintiff was independent in her daily activities and appeared to assume responsibility for her mother's care. (R. 27—28). Thus, the Court does not find the ALJ's inclusion of the ability to meet general production demands lacks adequate evidentiary support.

Next, Plaintiff appears to argue that her pain itself should have been evaluated as a disabling impairment, arguing that her complaints of significant pain are supported by medical evidence and opinions in the record. She cites Social Security Ruling 16-3p for support. Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). SSR 16-3p explains that once there is an evidence-based, medical foundation for alleged pain, ALJs must consider all the evidence to understand the extent of Plaintiff's pain and related limitations. "SSR 16-3p is a

Social Security Ruling rather than a Listed Impairment," and "'[s]atisfying' SSR 16-3p does not somehow lead to a finding that a claimant is *per se* disabled." *Bryant*, 2021 WL 2646942, at *2. Rather, "SSR 16-3p simply 'gives guidance to an ALJ in complying with regulations which direct an ALJ to consider a claimant's claims of pain, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."'" *Id.* (citing *Sudler v. Saul*, Civ. No. 18-5064, 2019 WL 7811341, at * 5 (E.D. Pa. Nov. 19, 2019)). Thus, to the extent Plaintiff argues her pain itself should have been deemed a "disabling impairment," that is an inaccurate reading of SSR 16-3p.

Insofar as Plaintiff's argument might be interpreted to mean the ALJ failed to consider Plaintiff's claimed pain and evidence in the record related to it, the Court is unconvinced. Though Plaintiff argues evidence that corroborated her pain was underappreciated, she does not identify evidence the ALJ overlooked. And, reviewing the decision, the Court finds the ALJ specifically considered Plaintiff's testimony concerning her pain, but found her representations were undermined by relatively normal physical findings and Plaintiff's activities like caring for her mother. (R. 26—27). Because the ALJ considered Plaintiff's alleged pain and explained how she reconciled it with the other evidence in the record, the Court finds no deficiency.

Plaintiff also argues substantial evidence does not support the RFC because the ALJ misunderstood one of the medical opinions in the record. The opinion in question is a March 2018 letter from medical consultant Renée Schreiber Chervenak, M.D., working on behalf of Plaintiff's disability insurance carrier, to one of Plaintiff's providers, Dr. Stone. (R. 740). Plaintiff had visited Dr. Stone in 2017, and he had diagnosed her with "right C5-7 radiculopathy and carpal and cubital tunnel syndrome." (R. 741). He also ordered MRI and EMG testing, the results of which were normal. (R. 741). Dr. Stone subsequently recommended injections for relief. (R. 741). Writing to Dr. Stone, Dr. Chervenak indicated that "[o]n preliminary review, the available medical records do not appear to support that [Plaintiff] lacks the capacity to perform . . . her own sedentary occupation . . . because. . . diagnostic studies have not identified any underlying explanation for [her] reported symptoms." (R. 741). Dr. Chervenak further noted that it seemed Plaintiff provided care to her mother which would indicate she maintained the capacity for sedentary work. (R. 741). Dr. Chervenak asked Dr. Stone whether he "agree[d]" that Plaintiff's medical records "do not appear to support that [she] lacks the capacity to perform . . . her own sedentary occupation," to which Dr. Stone marked with an "X," "No." (R. 742). Thus, Dr. Stone indicated his opinion that Plaintiff could not return to sedentary work, contrary to Dr. Chervenak's position. Dr. Stone's only explanation for his response was that he "ha[d] not seen [Plaintiff] since December 2017 [and] she has been [r]eferred for botox injections and is still in treatment." (R. 742).

Considering this exchange between Dr. Chervenak and Dr. Stone, the ALJ afforded Dr. Chervenak's opinion "little weight" because it lacked detail and because Dr. Chervenak was not her treating physician. (R. 29). Because Dr. Chervenak was posing a question to Dr. Stone, Plaintiff argues it was inappropriate for the ALJ to afford the statements in the letter even little

weight. However, Plaintiff cites no authority for the proposition that a doctor's opinion ceases to be an opinion when it is included in a question posed to another medical professional seeking an expression of agreement or disagreement. Accordingly, the Court finds no fault in the ALJ's consideration of Dr. Chervenak's opinion.

Plaintiff's next argument is that the RFC outlined by the ALJ lacks appropriate limitations for her mental health impairments, particularly major depressive disorder, which the ALJ found to be a severe, medically determinable impairment. (R. 23). Plaintiff points to evidence in the record, mainly from Plaintiff's primary care physician, Dr. Dugan, who documented Plaintiff's mental health symptoms, including depressed mood, weight loss, insomnia, fatigue, difficulty concentrating, and passive death wish. (R. 614). Plaintiff also notes her treatment regimen, which consisted primarily of maintaining and adjusting her prescription for Zoloft. (R. 617, 822). Plaintiff broadly argues that the ALJ failed to appreciate the severity of her mental health impairments. She acknowledges that the ALJ included limitations in the RFC specifically because of Plaintiff's mental health symptoms, but she argues those limitations did not go far enough. She has not identified what further limitations are supported by evidence in the record and the Court finds no failure in the ALJ's consideration of Plaintiff's mental health impairments toward the RFC determination. The ALJ's consideration of Plaintiff's records and treatment history over the course of the relevant time period is thorough. She considered Plaintiff's 2017 records related to mental health which evinced normal mood, but also difficulty concentrating, sleeping, and maintaining weight. (R. 28). She recounted that through part of 2018, Plaintiff denied depressed mood or sleep disturbance. (R. 28). She further considered Plaintiff's treatment with her PCP who helped Plaintiff maintain her psychiatric medication regimen. Based on that evidence, she limited Plaintiff to "performing routine and repetitive tasks," making "simple work-related decisions," interacting with co-workers and the public only occasionally and not for the purpose of "persuading, negotiating, or instructing," and working in a work setting with "few changes." (R. 28—29). Reviewing those limitations and the ALJ's consideration of the evidence, the Court is satisfied that the ALJ's RFC determination is supported by such evidence as a reasonable mind would find satisfactory. *Hartranft*, 181 F.3d at 360.

Plaintiff's final protest of the ALJ's decision concerns the VE's testimony. Plaintiff's criticism of the VE's testimony and the ALJ's reliance upon it to arrive at her non-disability determination is threefold. First, Plaintiff argues the VE's testimony about job availability is unreliable because the ALJ's RFC determination—the basis for the hypothetical questions—was incorrect. This is merely a restatement of her argument against the RFC, which the Court has already addressed. *See Covone v. Comm'r Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) ("Although claimant argues that the hypothetical question posed by the ALJ does not adequately represent her functional limitations, it is apparent that the hypothetical in fact directly tracks the RFC finding. The claimant's challenge, therefore, amounts to an argument that the ALJ's determination of her RFC is not supported by substantial evidence.").

Next, Plaintiff argues the ALJ implicitly rejected the VE's testimony concerning off-task time and absences. At the hearing, the ALJ asked the VE about jobs that would be available to someone with Plaintiff's abilities and further inquired into employer tolerance for off-task time and absences. (R. 55). The VE indicated that such employers generally tolerate 10% off-task time and one absence each month. (R. 55). Plaintiff now argues the ALJ rejected that testimony and "misapprehended how significantly" Plaintiff's impairments would affect her ability to remain on-task and avoid absences. (Doc. No. 12, pg. 22). However, what Plaintiff fails to apprehend is that while the ALJ inquired into how much off-task time and absenteeism employers would tolerate, she was not required to add more limitations into Plaintiff's RFC based on that testimony. Plaintiff has not identified any evidence in the record that establishes Plaintiff will require more than 10% off-task time and more than one absence per month. Therefore, the Court finds no error in the ALJ's consideration of the VE's testimony in this regard.

Finally, Plaintiff challenges the VE's testimony concerning the three light-work jobs she identified for Plaintiff. "Vocational expert testimony constitutes substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments." *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). Considering the opportunities available to a hypothetical individual of Plaintiff's same age, education, and work experience, as well as all of the limitations appropriate for inclusion in Plaintiff's RFC, the VE testified such a person could find work as an office helper, folder, and electrical parts assembler. (R. 31). As the ALJ explained in her decision, the Dictionary of Occupational Titles (DOT) description of these positions was consistent with the VE's testimony, except insofar as the VE had to rely on professional experience for job characteristics not included in the DOT like "sit/stand options, occasional reaching overhead, off-task and absenteeism." (R. 31).

Plaintiff argues that, contrary to the VE's testimony, the jobs identified for her are not jobs she could perform. She speculates that there are duties necessary to each of those positions that she would find unmanageable. For instance, she argues that office work is too varied day-to-day to be considered a stable work environment where work processes remain generally constant. (Doc. No. 12, pg. 22). Arguing that the positions the VE identified are actually incompatible with all of the limitations the ALJ found appropriate for inclusion in the RFC, it appears Plaintiff is alleging inconsistency between the DOT and the VE's testimony that renders the latter unreliable. However, Plaintiff has not identified any specific inconsistency between the DOT's description of the three jobs identified and the VE's testimony. *Cf. Boone v. Barnhart*, 353 F.3d 203, 207 (3d Cir. 2004) (faulting the ALJ for failing to acknowledge a conflict between the DOT and VE testimony). The VE explained that he had to rely on his professional experience to account for certain limitations that are not addressed in the DOT, for example, standing and walking limitations. (R. 56). Plaintiff could have objected to the VE's testimony in that regard but did not object at that point or any other, nor did Plaintiff's counsel object to the

8

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED in part and DENIED in part, as specified above.

/s Alan N. Bloch
United States District Judge

ecf:   Counsel of Record

---

VE's qualifications.  Neither did Plaintiff's counsel question the VE concerning the jobs he identified as suitable for an individual with the Plaintiff's RFC.  Because there was no objection to the VE's testimony at the time of the hearing, the ALJ was permitted to rely on the VE's testimony.  *Clawson v. Astrue*, No. CIV.A. 11-294, 2013 WL 154206, at *6 (W.D. Pa. Jan. 15, 2013).  For that reason and because Plaintiff has not identified any conflict between the DOT job descriptions and the VE's testimony, the Court finds no error in the ALJ's reliance on the VE's testimony.  Accordingly, the Court will affirm the Commissioner's final decision.